# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Criminal No. 06-130(01) (DSD-JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Carlos Meza Guillermo,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on May 30, 2006, on the pretrial motions of defendant Carlos Meza Guillermo. W. Anders Folk, Assistant United States Attorney, appeared on behalf of the Government. Thomas G. Dunnwald, Esq., appeared on behalf of Mr. Meza (Meza).[1]

Meza advances two motions to suppress. One seeks to suppress eyewitness identifications (Doc. No. 39). Meza represented at the motion hearing that identifications were not at issue, and accordingly, this motion will be denied as moot. The other seeks to suppress evidence from search and seizure (Doc. No. 45). Meza challenges the scope of his detention following a traffic stop, and he further contends he did not consent to a search of his person during the stop. He separately challenges the sufficiency of an

---

[1] At the motion hearing, Meza stated that the case caption was incorrect and that his name is Carlos Guillermo Meza. As this Court previously acknowledged in its order of June 1, 2006, Meza will be referred to according to his preference. But this report and recommendation shall not be taken as a ruling on whether the defendant is correctly named. Meza has filed a motion to make such a correction, which this Court will address in a separate order.

affidavit offered in support of a search warrant executed at his residence. These questions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I. BACKGROUND

While on patrol around 7:30 p.m. on March 26, 2006, Officer Tony Gruenig of the Brooklyn Center Police Department received a general dispatch from a member of the Anoka-Hennepin Drug Task Force (the Task Force). The dispatcher advised officers to "develop probable cause" to stop a black Chevrolet Impala in the vicinity. Officer Gruenig (Gruenig) spotted a black Impala and, in the darkness, observed that its rear license plate was not illuminated. Based on this violation, Gruenig activated his lights and initiated a traffic stop.

The black Impala stopped by a nearby gas station. In addition to the driver, who was later identified as Meza, there were two passengers in the car. After approaching, Gruenig informed Meza that his rear license plate was not illuminated and asked for his drivers license. Meza produced an Arizona drivers license bearing the name Eric Martinez. Gruenig asked what Meza was doing in Minnesota, and Meza purportedly answered, "We're not doing anything, nothing at all." According to Gruenig, Meza seemed nervous and uncomfortable.

At some point after Gruenig initiated the traffic stop, at least two plainclothes officers from the Task Force arrived on the scene. After his initial questions to Meza, Gruenig briefly consulted with the other officers. Gruenig then told Meza to step out of the car. He initially asked Meza if he was carrying any drugs, weapons, or other dangerous items, which Meza allegedly denied. Gruening next asked Meza for permission to search his person. Meza allegedly said to "go ahead."

Gruenig states that he had no problem communicating with Meza. According to Gruenig, he used an ordinary tone of voice, and neither he nor the officers resorted to any threats or coercion to obtain permission to search.

While conducting a pat-down search of Meza, Gruenig felt an object through the fabric of the front right pants pocket. The object was a hard cylinder approximately two inches long and a half of an inch across. After removing the object from the pocket, Gruenig discovered it was a glass vial containing a white powdery substance, later determined to be cocaine. Gruenig subsequently recovered $853 in cash from Meza's other pockets. The officers took Meza into custody and the black Impala was impounded.

Four days later, on March 31, 2006, members of the Task Force were conducting surveillance on an apartment in Brooklyn Center. The officers observed two men making frequent visits to the apartment and to another house in Brooklyn Center. As the two men were leaving the house, the officers arrested them. Both men possessed amphetamine. Following the arrest, officers searched the house. They recovered a substantial amount of illegal drugs and some documents bearing the address of the apartment.

The next day, a member of the Task Force obtained a search warrant for the apartment. In the affidavit accompanying the warrant, the officer recounted the events on March 31, 2006. When members of the Task Force executed the warrant, they recovered illegal drugs, several weapons, and approximately $16,000 in cash.

## II. DISCUSSION

### A.

Meza challenges the scope of his detention following the traffic stop, and contends that he did not consent to a search of his person. The Government contends that the stop was legal. But it argues that if

3

the detention was illegal, but Meza freely granted permission for a search, then the fruits of the search may be admitted. For the sake of argument, this Court will assume that Meza was improperly detained at some point during his encounter, in order to reach the controlling issue of consent.

The Fourth Amendment requires officers to acquire a warrant before going forward with a search, subject to limited exceptions. *United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006). One such exception is where a person consents to be searched. *United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005).

If officers have illegally detained a person, but that person then consents to be searched, then a two part test is used to determine whether the consent exception applies and the fruits of the search are admissible. The first part asks whether the consent was freely and voluntarily given. If so, then the second part asks whether this consent was a sufficient act of free will to purge the taint of the illegal detention. *United States v. Perry*, 437 F.3d 782, 785 (8th Cir. 2006); *United States v. Becker*, 333 F.3d 858, 861-62 (8th Cir. 2003).

To determine whether consent is freely and voluntarily given, a court looks at the totality of the circumstances. The Government has the burden to show consent. And to satisfy this burden, it must show something more than that the defendant acquiesced to officers' claim of authority. *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005).

Several factors are relevant to whether consent is freely and voluntarily given. Some are based on the defendant's characteristics, such as age, general intelligence, sobriety or intoxication, and awareness of rights and protections. Other factors examine external circumstances, such as the length for which the defendant is detained; whether the encounter occurred in a public or secluded place; whether the defendant

is in custody or under arrest; and whether officers resorted to coercion or intimidation. *See United States v. Urbina*, 431 F.3d 305, 309 (8th Cir. 2005).

If consent is freely and voluntarily given, three factors are used to determine whether the consent a sufficient act of free will to purge the taint of a prior illegal detention. These factors are (1) the temporal proximity of the illegal seizure and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *United States v. Yousif*, 308 F.3d 820, 830 (8th Cir. 2002) (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

The Eighth Circuit has frequently examined consent searches that occur in the context of a traffic stop. Where officers briefly but improperly extend the scope of a traffic stop, and a valid consent search takes place during the stop, the fruits of the search are ordinarily admissible. *See United States v. Yang*, 345 F.3d 650, 654-55 (8th Cir. 2003); *United States v. Beatty*, 170 F.3d 811 (8th Cir. 1999).

Here, Meza was briefly detained before Gruenig asked permission to search. Meza was lucid and had no difficulty communicating. Neither Gruenig nor the other officers engaged in coercive or threatening behavior. The encounter took place in a public place, a gas station parking lot, in the early evening. These circumstances show that Meza freely and voluntarily granted his consent for officers to search his person.

Meza consented to the search a very short time after he was originally detained. Assuming that Meza was illegally detained at some stage during the encounter, there was close proximity between the violation and the consent. Thus, there was no time for intervening circumstances. The encounter took place in a few minutes. It was brief and public. The officers on the scene did not resort to coercive or threatening conduct. So if there was any official misconduct, it was not flagrant.

Given this limited intrusion, consent by Meza was a sufficient act of free will to purge the taint of any prior illegal detention. *See Beatty*, 170 F.3d at 814. The fruits of the ensuing search, consequently, need not be suppressed.

**B.**

Meza also contends that his Fourth Amendment rights were violated, when his apartment was searched, because the search warrant was not supported by probable cause. The Fourth Amendment requires that, for a search warrant to be authorized, a detached and neutral magistrate must find that it is supported by probable cause. *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).

A search warrant is supported by probable cause when a reasonable person, considering the facts and circumstances alleged in the accompanying affidavit, would find a fair probability that incriminating evidence is on the premises to be searched. *Illinois v. Gates*, 642 U.S. 213, 238 (1983). When reviewing the sufficiency of the affidavit, a court may only consider the information stated in the affidavit. *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003).

Where officers' surveillance shows that drug traffickers frequently visit a residence, there is a fair probability that drugs and other incriminating evidence are on the premises. Such allegations are sufficient to establish probable cause in support of a search warrant. *See, e.g., United States v. Gamboa*, 439 F.3d 796, 805 (8th Cir. 2006); *United States v. Johnigan*, 90 F.3d 1332, 1336-37 (8th Cir. 1996).

Here, officers arrested two men for possession of methamphetamine. Those men were also observed making frequent visits to a house and an apartment. When officers executed a search warrant for the house, they discovered substantial amounts of contraband, as well as documents bearing the address of the apartment. Based on the inference that drug trafficking also occurred at the apartment, these

circumstances demonstrate a reasonable probability that contraband would be found there. Thus the search warrant is supported by probable cause and the fruits of the search are properly allowed.

### III.   CONCLUSION

As discussed above, this Court concludes that Meza freely and voluntarily consented to a search of his person. Even if officers improperly detained Meza for some period, the consent was a sufficient act of free will to purge the taint of the prior misconduct. So the evidence that was obtained as a result of the search need not be suppressed. This Court further concludes that, when officers executed a search warrant for Meza's apartment, the warrant was supported by probable cause. Evidence from this incident also need not be suppressed.

### IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Meza's motion to suppress eyewitness identifications (Doc. No. 39) be **DENIED AS MOOT.**

2. Meza's motion to suppress evidence from search and seizure (Doc. No. 45) be **DENIED.**

Dated this 22nd day of June, 2006.               s/Jeanne J. Graham

JEANNE J. GRAHAM<br>United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by July 13, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500

words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.